UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT G. PULLEY,<br><br>Petitioner,<br><br>v.<br><br>D. PARAMO, Warden, et al.,<br><br>Respondents. | Case No.: 14-CV-2034 JLS (MDD)<br><br>**ORDER: (1) OVERRULING PETITIONER'S OBJECTIONS; (2) ADOPTING REPORT AND RECOMMENDATION; AND (3) DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF Nos. 1, 48, 53) |

Presently before the Court are: (1) Magistrate Judge Mitchell D. Dembin's Report and Recommendation ("R&R") advising that the Court deny Petitioner's petition for writ of habeas corpus (R&R, ECF No. 48); and (2) Petitioner's Objections to the R&R ("R&R Obj.", ECF No. 53). Respondents did not file a reply to Petitioner's objections. Having considered the facts and the law, the Court (1) **OVERRULES** Petitioner's Objections, (2) **ADOPTS** the R&R in its entirety, and (3) **DENIES** Petitioner's Petition for Writ of Habeas Corpus.

/ / /

/ / /

# BACKGROUND

Magistrate Judge Dembin's R&R contains a thorough and accurate recitation of the factual and procedural histories underlying the instant petition for writ of habeas corpus. (*See* R&R 2–11.[1]) This Order incorporates by reference the background as set forth therein.

# LEGAL STANDARDS

## I. Review of Report and Recommendation

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties regarding a magistrate judge's report and recommendation. The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980). In the absence of a timely objection, however, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 510 F.2d 196, 206 (9th Cir. 1974)).

## II. Review of Habeas Corpus Petitions Under 28 U.S.C. § 2254

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

Under § 2254(d)(1), federal law must be "clearly established" in order to support a habeas claim. Clearly established federal law "refers to the holdings, as opposed to the

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

dicta, of [the United States Supreme] Court's decisions . . . ." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court's decision may be "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406. A state court decision does not have to demonstrate an awareness of clearly established Supreme Court precedent, provided neither the reasoning nor the result of the state court decision contradict such precedent. *Early*, 537 U.S. at 8.

A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. An unreasonable application may also be found "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).

Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S. Ct. 1697, 1706–07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). An unreasonable application of federal law requires the state court decision to be more than incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). Instead, the state court's application must be "objectively unreasonable." *Id*.; *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Even if a petitioner can satisfy § 2254(d), the petitioner must still demonstrate a constitutional violation. *Fry v. Pliler*, 551 U.S. 112, 119–22 (2007).

Federal courts review the last reasoned decision from the state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991); *Hibbler v. Benedetti*, 693 F.3d 1140, 1145–46

(9th Cir. 2012). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). The petitioner must establish that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (citation omitted). It is not within a federal habeas court's province "to reexamine state court determinations on state-law questions." *Hayes v. Ayers*, 632 F.3d 500, 517 (9th Cir. 2011) (citing and quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

Finally, § 2254 authorizes habeas relief where the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C. § 2254(d)(2). This provision requires the petitioner to demonstrate by clear and convincing evidence that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable. *Miller-El*, 537 U.S. at 340.

## ANALYSIS

### I.   Summary of the R&R Conclusion

Magistrate Judge Dembin recommends that the Court deny the Petition in its entirety. (R&R 1.) The Petition contains two claims for relief. (*Id.* at 2; *see also* ECF No. 1.) First, Petitioner contends that his Fourteenth Amendment due process rights were violated because there was insufficient evidence to overcome the presumption under Penal Code § 187(a) that he was acting in self-defense in his home when he killed Misaalefua in the garage attached to Petitioner's house. (ECF No. 1 at 6, 31–41.) Second, Petitioner contends that his due process rights were violated because there was no evidence of malice, thus requiring that his conviction be reduced from murder to manslaughter. (ECF No. 1 at 41–44.) Magistrate Judge Dembin ultimately concludes that the Petition should be denied

because the appellate court's decision was neither unreasonable nor contrary to clearly established federal law, and was not based on an unreasonable determination of the facts. (R&R 31, 41.)

Petitioner first argues that there was insufficient evidence to override the presumption that his killing of Misaalefua was justified by his reasonable fear that Misaalefua intended to harm him in his home. Specifically, Petitioner argues that the court of appeal's decision was based on false evidence, insufficient evidence, and an unreasonable determination of the facts. (*Id.* at 21; *see also* ECF No. 1 at 6, 31–41.) Respondents argue that the state court's rejection of Petitioner's claim was reasonable and not contrary to controlling Supreme Court authority. (R&R 22 (citing ECF No. 10-2 at 9–14).)

Magistrate Judge Dembin examined the appellate court's opinion and found that "[v]iewing the evidence in the light most favorable to the prosecution shows a rational trier of fact could have found the evidence against Petitioner was sufficient to prove beyond a reasonable doubt that Petitioner was not legally justified in using deadly force against the victim, even though the killing occurred in Petitioner's home." (*Id.* at 25.) Additionally, Magistrate Judge Dembin found that it was "immaterial" that the state court found that "[t]he jury could have reasonably inferred that Misaalefua was not attempting to enter [Petitioner's] *home*," (ECF No. 11-22 (Lodg. 5) at 16) (emphasis added)), because "the state court did not rely on the objectionable suggestion—that the killing happened outside the home—in its decision." (R&R at 30.) In particular, Magistrate Judge Dembin stated

> the appellate court found that the jury could have found Petitioner met his evidentiary burden to raise the presumption that he was protecting himself against an intruder in his home, but that the jury nevertheless found the killing was not legally justified because Petitioner used more force than was reasonable to defend against the danger.

(*Id.* (citing ECF No. 11-22 (Lodg. 5) at 16).) Thus Magistrate Judge Dembin concluded that "the state court's adjudication did not result in a decision contrary to federal law, was

5

not an unreasonable application of federal law, and was not based on an unreasonable determination of the facts presented at the state proceeding." (*Id.* at 31.)

Petitioner next argues that there was insufficient evidence of "malice aforethought" to support the second degree murder conviction. (ECF No. 1 at 41–44.) Specifically, Petitioner argues that the evidence demonstrates he was pursued into his home by someone who wanted to cause him physical harm, and he lacked capacity to form malice due to his intoxication. (*Id.* at 44.) Respondents argue that the state appellate court's decision was not contrary to or an unreasonable application of Supreme Court authority, and was not based on an unreasonable determination of facts. (R&R 37; *see also* ECF No. 10-2 at 14–17.)

Magistrate Judge Dembin examined the appellate court's opinion and found that "[v]iewing the evidence in the light most favorable to the prosecution shows a rational trier of fact could have found the evidence against Petitioner was sufficient to support the finding of malice aforethought." (R&R 39.) Specifically, Magistrate Judge Dembin found that the facts show Petitioner had time and capacity to remove himself from the fight and rationally consider his actions. (*Id.* at 39–40.) Additionally, Magistrate Judge Dembin found that a jury could rationally find sufficient circumstantial evidence of express malice from Petitioner's provocation of Misaalefua, as well as implied malice from Petitioner's decision to return to confront Misaalefua despite "his extensive training in gun safety, and from his decision to bring a loaded gun with the safety off when he returned to face Misaalefua." (*Id.* at 40.) Furthermore, Magistrate Judge Dembin found that a rational jury also could have found that Petitioner's intoxication did not negate his ability to harbor malice. (*Id.* at 41.) Thus Magistrate Judge Dembin concluded that the appellate court's decision to affirm the conviction "was neither unreasonable nor contrary to clearly established federal law, and was not based on an unreasonable determination of the facts." (*Id.*)

///
///

## II. Summary of Petitioner's Objections

Petitioner outlines six objections to Magistrate Judge Dembin's R&R. First, Petitioner argues that Magistrate Judge Dembin improperly relied on the court of appeal's opinion rather than conduct an independent review of the state court record. The remaining of Petitioner's first objection is a summary of the various arguments he makes in objections two through six. (*See* R&R Obj. 3–6 ("Introduction").)

Second, Petitioner argues that res judicata and collateral estoppel bar Magistrate Judge Dembin's finding that Petitioner "Goaded" or provided Misaalefua with a "[p]rovocative invitation." (R&R Obj. 6.) In particular, Petitioner contends that, in acquitting Petitioner of murder in the first degree, the jury rejected the prosecutor's argument that Petitioner "willfully and deliberately" provoked Misaalefua to take some action against Petitioner. (*Id.*)

Third, Petitioner objects to Magistrate Judge Dembin's conclusion that Petitioner entered his house "**while** Misaalefua stood in the garage." (R&R Obj. 8 (emphasis in original).) Petitioner argues that the record "provides direct evidence" both that Misaalefua followed Petitioner "at a distance of ten to 15 feet" when Petitioner fled his home and that Petitioner "was not seen inside the garage" attached to Petitioner's house when Misaalefua walked into the garage. (*Id.*) Thus, Petitioner argues that the evidence demonstrates Petitioner was unaware that Misaalefua had entered and was inside Petitioner's garage. (*Id.*)

Fourth, Petitioner objects to Magistrate Judge Dembin's conclusion that "Petitioner immediately got the loaded gun . . . opened the door between the house and the garage, and shot the neighbor in the chest at close range . . . immediately . . . ." (*Id.* at 14–15.) Petitioner claims the record provides clear and convincing evidence that Misaalefua presented an imminent and immediate threat of danger to Pulley's life, thus rebutting the state court's determination that "[w]ithout further physical threat from Misaalefua, [Petitioner] fired a shot at Misaalefua." (*Id.* at 15.)

Fifth, Petitioner objects to Magistrate Judge Dembin's conclusion that the state court

made an "inaccurate" determination that the jury "could have reasonably inferred that Misaalefua was not attempting to enter [Petitioner's] home." (*Id.* at 25) In particular, Petitioner argues that this finding was objectively unreasonable because evidence demonstrated the garage was part of the home, and the state court acknowledged that Misaalefua was in the garage.

Sixth, and as a corollary to his fifth objection, Petitioner objects to Magistrate Judge Dembin's statement that the state court's finding—namely, that the jury could have reasonably inferred that Misaalefua was not attempting to enter Petitioner's home—was "immaterial" to the state court's ultimate conclusion affirming Petitioner's conviction. (*Id.* at 27.) Additionally, Petitioner seems to assert new claims for relief that do not appear in his Petition. (*See id.* at 31–52.)

## III. Court's Analysis

The Court will review, *de novo*, each part of the R&R to which Petitioner has objected.

### A. Objection One

Petitioner's first objection focuses on whether Magistrate Judge Dembin improperly relied on the court of appeal's opinion for factual findings rather than conducting an independent review of the state court record.[2] However, the Court finds that Magistrate Judge Dembin's reliance on the state court opinion was proper. While it is true that in federal habeas proceedings a federal court must conduct an independent review of the state court record to evaluate the merits of a sufficiency-of-the-evidence challenge, see *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997), the Magistrate Judge—and this Court—generally may rely on factual findings made by the state court because those findings are entitled to a presumption of correctness. Specifically, after the enactment of AEDPA,

---

[2] As previously noted, the remainder of Petitioner's first objection is a summary of the various arguments he makes in objections two through six. (*See* R&R Obj. 3–6 (labeling his first objection as "Introduction").) The Court addresses those arguments where they appear in Petitioner's separate objections.

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 340 ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding . . . ."). Additionally, Magistrate Judge Dembin—and now this Court—considered Petitioner's cited evidence in assessing the merits of his Petition. Whether Petitioner's cited evidence rebuts the presumption of correctness by clear and convincing evidence as to certain facts is discussed in his several objections below. Accordingly, the Court overrules Petitioner's first objection.

### B. Objection Two

Petitioner's second objection focuses on whether Magistrate Judge Dembin's finding that Petitioner "goaded" or otherwise provoked Misaalefua is barred by res judicata or collateral estoppel.

Under California law, "res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 896 (2002). "Collateral estoppel, or issue preclusion, precludes relitigation of issues argued and decided in prior proceedings." *Id.* (citing *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990) (quotations omitted)). Collateral estoppel applies if several threshold requirements are fulfilled: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding[;] Second, this issue must have been actually litigated in the former proceeding[;] Third, it must have been necessarily decided in the former proceeding[;]

Fourth, the decision in the former proceeding must be final and on the merits[;] Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." *Lucido*, 51 Cal. 3d at 341 (1990).

Federal law similarly states that "[r]es judicata, or claim preclusion, provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (citing *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979) (quotations omitted))). "The related doctrine of collateral estoppel, or issue preclusion, provides that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* (citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)) (quotations omitted). "Both doctrines apply to criminal and civil proceedings." *Id.* (citing *United States v. Cejas*, 817 F.2d 595, 598 (9th Cir. 1987). "[B]oth doctrines require privity between the parties." *Id.*

Petitioner argues that

> [t]he record of the State court proceedings provides evidence that the jury acquitted Petitioner of murder in the first degree, rejecting the prosecutor's argument that Petitioner willfully and deliberately persuaded, instigated, goaded, provoked, invited or incited Misaalefua to . . . [take some action] for [Petitioner's] premeditated, planned, created, calculated, intended, contrived, or designed objective to shoot, kill, murder, set up a defense, or whatever . . . .

(R&R Obj. 6.) Thus, Petitioner argues that Magistrate Judge Dembin's finding that Petitioner "goaded" or otherwise provoked Misaalefua is barred by res judicata or collateral estoppel.

Neither res judicata nor collateral estoppel apply to Magistrate Judge Dembin's finding that Petitioner "goaded" or otherwise provoked Misaalefua. For one, both doctrines require privity, but neither Magistrate Judge Dembin nor this Court is a "privy" of the state government. Additionally, while res judicata would prevent the state or its

privy from relitigating the first degree murder claim against Petitioner, Magistrate Judge Dembin's review of Petitioner's habeas claim does not constitute a re-litigation of the first degree murder claim. Similarly, collateral estoppel does not apply because Magistrate Judge Dembin's review of the Petition likewise does not constitute a re-litigation of the issues involved in the first degree murder charge. And, more fundamentally, even if, as here, the jury found Petitioner innocent of first degree murder, that finding does not necessarily mean that the jury also found that he did not generally goad or otherwise provoke Misaalefua, since those elements are not required for first degree murder.[3] Accordingly, the Court overrules Petitioner's second objection.

### C. Objection Four

Petitioner's fourth objection[4] focuses on whether there is sufficient evidence to overcome the California Penal Code § 198.5 statutory presumption that Petitioner's conduct was legally justified because Misaalefua unlawfully entered his residence. Specifically, Petitioner argues that, based on the evidence, "no rational trier of fact could have found that [Petitioner] did not reasonably believe that Misaalefua was not advancing for attack" and thus the killing was justified. (R&R Obj. 24–25.)

Magistrate Judge Dembin correctly set out the legal standard for reviewing a criminal conviction for lack of evidentiary support. (R&R 23–25.) "In reviewing a criminal conviction challenged as lacking evidentiary support, the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." *People v. Halvorsen*, 42 Cal. 4th 379, 419 (2007) (quoting *People v. Combs*, 34 Cal. 4th 821, 849 (2004), and citing *Jackson v. Virginia*, 443 U.S. 307, 319

---

[3] *See* Cal. Penal Code § 189 (defining first degree murder as "murder which is perpetrated by . . . any other kind of willful, deliberate, and premeditated killing . . . .").

[4] The Court discusses Petitioner's fourth objection before his third objection because a discussion of the former provides a better background for the latter.

(1979)); *see Gonzales*, 52 Cal. 4th at 294. The court is to presume, in support of the judgment, the existence of every fact the trier could reasonably deduce from the evidence—including both direct and circumstantial evidence. *People v. Prince*, 40 Cal. 4th 1179, 1251 (2007) (quoting *People v. Catlin*, 26 Cal. 4th 81, 139 (2001)).

United States Supreme Court precedent is essentially the same. Under clearly established federal law, "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318. In federal habeas proceedings, the magistrate judge must conduct an independent review of the state court record to evaluate the merits of a sufficiency-of-the-evidence challenge. *See Jones*, 114 F.3d at 1008.

The question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319; *see Johnson v. Louisiana*, 406 U.S. 356, 362 (1972). "Although it might have been possible to draw a different inference from the evidence, [a federal habeas court is] required to resolve that conflict in favor of the prosecution." *Ngo v. Giurbino*, 651 F.3d 1112, 1115 (9th Cir. 2011).

Federal habeas courts also must analyze *Jackson* claims "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) (quoting *Jackson*, 443 U.S. at 324 n.16). Under California law, the elements of second degree murder are (1) the killing of another human being (2) without justification and (3) with "malice aforethought." Cal. Penal Code § 187(a). There is no dispute that Petitioner killed another human being. However, Petitioner here contends the second element is not met because his killing of Misaalefua was legally justified. In particular, Petitioner argues that the killing was legally justified under California Penal Code § 198.5. This section provides:

> Any person using force intended or likely to cause death or great bodily injury within his or her residence shall be presumed to

> have held a reasonable fear of imminent peril of death or great bodily injury to self, family, or a member of the household when that force is used against another person, not a member of the family or household, who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using the force knew or had reason to believe that an unlawful and forcible entry occurred.
>
> As used in this section, great bodily injury means a significant or substantial physical injury.

California Penal Code § 198.5 was created "to permit residential occupants to defend themselves from intruders without fear of legal repercussions, to give the benefit of the doubt in such cases to the resident, establishing a [rebuttable] presumption that the very act of forcible entry entails a threat to the life and limb of the homeowner." *People v. Owen*, 226 Cal. App. 3d 996, 1005 (1991) (citation omitted). If Petitioner can show that the jury's finding that the prosecution overcame the presumption is not supported by sufficient evidence, his murder conviction must be reversed.

Petitioner objects to Magistrate Judge Dembin's conclusion that "Petitioner immediately got the loaded gun . . . opened the door between the house and the garage, and shot the neighbor in the chest at close range . . . immediately . . . ." (R&R Obj. 14–15.) To the contrary, Petitioner claims that the record provides clear and convincing evidence that Misaalefua presented an imminent and immediate threat of danger to Petitioner's life, thus rebutting the court of appeal's determination that "[w]ithout further physical threat from Misaalefua, [Petitioner] fired a shot at Misaalefua." (*Id.* at 15.) Petitioner cites several pieces of evidence from the record in support of his argument that "Misaalefua's size, state of mind and progression to within arms reach of [Petitioner] after the unprovoked assault in the cul-de-sac presented an immediate threat of danger to [Petitioner's] life." (*Id.* at 17.) First, Petitioner argues the evidence demonstrates that Misaalefua removed his shirt in Petitioner's garage, thus indicating Misaalefua was looking to fight. (*Id.* 15–18.) Second, Petitioner argues the evidence demonstrates that Misaalefua was physically larger

than Petitioner and "extremely intoxicated." (*Id.* at 19–20.) Third, Petitioner argues the evidence demonstrates that Misaalefua was angry on the night of the shooting. (*Id.* at 21–22.) Finally, Petitioner argues the evidence demonstrates that Petitioner's gun was held less than six inches from the victim at the time Petitioner fired the gun. (*Id.* at 23–24.)

The Court finds that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the evidence against Petitioner was sufficient to prove beyond a reasonable doubt that Petitioner was not legally justified in using deadly force against Misaalefua, even though the killing occurred inside Petitioner's house. The evidence shows that both men were involved in a street altercation that involved no weapons. (ECF No. 11-22 (Lodg. 5) at 6.) Two men tried to break up the fight, and, once both were separated, Petitioner eventually started to walk back to his house. (*Id.*) As he was walking, he looked back at Misaalefua and said, "I got something for you. I got something for you, mother fucker," and Misaalefua followed, saying something like "[a]ll right, mother fucker. Let's go. Bring it on." (*Id.*) Petitioner entered his home, and Misaalefua waited approximately five to 15 feet outside the inner garage door. (*Id.* at 7.) Petitioner returned with a gun and, either immediately or after a short scuffle, Petitioner shot Misaalefua. (*Id.* at 7–8.)

The state court objectively and reasonably concluded that substantial evidence supports the conclusion the jury reached. At best, Petitioner's cited evidence might demonstrate that Petitioner reasonably feared for his safety. However, the state court's decision does not rest on whether Petitioner reasonably feared for his safety. Rather, the state court found that, even if the jury found that Petitioner reasonably feared for his safety, the jury could have concluded that Petitioner used more force than reasonable, thus overcoming any presumption in his favor.[5] (ECF No. 11-22 (Lodg. 5) at 16 ("The jury

---

[5] Despite Petitioner's objections, Petitioner appears to acknowledge this fact in his Petition: "The Court of Appeal concluded that the jury 'could have' concluded that petitioner used more force than necessary, but points to no facts in support of this possibility, nor does it explain how petitioner could have protected himself or his home." (ECF No. 1 at 39.) Petitioner does not re-raise this argument in his objections. Nevertheless, Magistrate Judge Dembin found that the state court adequately explained this possibility.

could have concluded that in retrieving a gun and shooting an unarmed man, [Petitioner] used more force than was reasonably necessary to protect himself or his house, and thus, that presumption of justification embodied in section 198.5 had been overcome by contrary evidence.").) While the state court acknowledged that a jury might have concluded that Petitioner's conduct was justified, the state court found that "as long as the circumstances reasonably justify the jury's findings, we will not reverse the jury's verdict simply because the evidence might support a contrary conclusion." (ECF No. 11-22 (Lodg. 5) at 16–17 (citing *People v. Sassounian*, 182 Cal. App. 3d 361, 408 (1986)).) The Court reaches the same conclusion. While a jury *could have* found in favor of Petitioner based on the arguments and evidence he presents in this objection, federal law similarly requires that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. Thus, the Court finds that the state court's determination is not contrary to federal law. Accordingly, the Court overrules Petitioner's fourth objection.

### D. Objection Three

Petitioner's third objection focuses on the state court's finding that Petitioner "entered the house through an interior garage door, **while** Misaalefua stood in the garage, between five and 15 feet away from the interior door, waiting for [Petitioner] to return." (R&R Obj. 6 (emphasis in original).) Petitioner's principal objection is with the word "while," since he argues that the evidence "clearly and convincingly" rebuts the determination that Petitioner was aware that Misaalefua had entered and was inside Petitioner's garage. (*Id.*) Thus, according to Petitioner, "[n]o rational trier of fact could have found that [Petitioner] had evidence that Misaalefua and/or his relatives were inside

---

(R&R 31 ("To the contrary, the appellate court explained that Petitioner used more force than necessary by 'bringing a gun to what was, essentially, a fistfight,' and then shot 'an unarmed man.' The appellate court further suggested that '[Petitioner] could have avoided the entire incident if he had simply remained inside his house,' and noted that Petitioner could have 'lock[ed] the [laundry] door or call[ed] the police.') (citing ECF No. 11-22 (Lodg. 5) at 16).)

the garage; therefore, requiring [Petitioner] . . . to defend against every . . . unknown threat falls below the threshold of rationality." (*Id.*)

The Court overrules Petitioner's third objection because it is irrelevant to any material determination by the state court. For one, it is not clear that the state court necessarily meant, as Petitioner suggests, that Petitioner entered into his house *as Misaalefua stood in the garage*—i.e., "while" he stood there. Furthermore, such a distinction is irrelevant, since the state court did not rely on this fact in finding that a jury could have reasonably found that Petitioner's use of deadly force against Misaalefua was unreasonable under the circumstances. In particular, the evidence shows that Petitioner engaged in a fist-fight with Misaalefua in the streets, thereafter fled home while yelling "I got something for you, mother fucker," entered his home, and reappeared with a gun. Even Petitioner admits, in his cited testimony, that he went inside the house to "grab" his gun. (R&R Obj. 13.) Thus, *regardless* of whether Petitioner knew that Misaalefua was inside the garage, the state court reasonably concluded that

> because Misaalefua did not attempt to follow [Petitioner] into [Petitioner's] house, the jury could have reasonably concluded that the fight had essentially ended when [Petitioner] walked inside the house and closed the door. Instead of locking the door or calling the police, [Petitioner] grabbed a gun and walked back out to the garage and did what he had earlier essentially threatened to do, i.e., he gave 'something' to Misaalefua. The jury could have concluded that in retrieving a gun and shooting an unarmed man, [Petitioner] used more force than was reasonably necessary to protect himself or his house, and thus, that the presumption of justification embodied in section 198.5 had been overcome by contrary evidence.

(ECF 11-22 (Lodg. 5) at 16.) The Court agrees with the state court's determination and finds that it is not contrary to federal law. Accordingly, the Court overrules Petitioner's fourth objection.

### E. Objections Five & Six

Petitioner's fifth objection focuses on whether the state court's determination that

the "jury could have reasonably inferred that Misaalefua was not attempting to enter [Petitioner's] home" is objectively unreasonable. (R&R Obj. 25.) As a corollary, Petitioner's sixth objection focuses on Magistrate Judge Dembin's statement that this fact was nevertheless immaterial because the state court did not rely on this fact when making its decision. (*Id* at 27.)

The Court overrules Petitioner's fifth and sixth objections. As to his fifth objection, Petitioner cites the following language from the state court's opinion as problematic: "The jury could have reasonably inferred that Misaalefua was not attempting to enter [Petitioner's] home . . . ." (R&R Obj. 25 (citing ECF 11-22 (Lodg. 5) at 16).) Petitioner argues that this determination is "objectively unreasonable" given the evidence in the case demonstrating that (1) Misaalefua was in the garage and (2) the garage is part of the home. (*Id.* at 25–27.) However, the Court agrees with Magistrate Judge Dembin in finding that even if this factual determination was inaccurate, it is immaterial to the state court's decision because the state court did not rely on this fact in its decision. That is because the state court's decision is based on the fact that Petitioner used more force than was reasonable, *even if* he was protecting himself against an intruder in his home. (ECF 11-22 (Lodg. 5) at 16 ("The jury could have concluded that in retrieving a gun and shooting an unarmed man, [Petitioner] used more force than was reasonably necessary to protect *himself or his house*, and thus, that the presumption of justification in section 198.5 had been overcome by contrary evidence.") (emphasis added).)

As already discussed above, the Court agrees with the appellate court and finds that a jury could have reasonably found that Petitioner used more force than was reasonably necessary, *even if* Misaalefua was already within Petitioner's home. Petitioner fled to his house after a street fight with Misaalefua while shouting, "I got something for you, mother fucker." Once inside, Petitioner retrieved a gun and came out to his garage. The Court agrees with the appellate court that Petitioner used more force than reasonably necessary by "bringing a gun to what was, essentially, a fistfight" and furthermore "could have avoided the entire incident if he had simply remained inside his house." (ECF 11-22 (Lodg.

5) at 16.) This conclusion—that Petitioner used more force than was reasonable—is based on a reasonable determination of the facts, and does not rest on the statement at issue in Petitioner's fifth and sixth objection.

In further support of his sixth objection, Petitioner argues several claims that do not appear in his Petition, and some claims which Petitioner previously sought to assert in an amended petition, but which the Court denied. (R&R Obj. 31–54; *see* ECF No. 47, at 30 (finding that Petitioner's "new, unexhausted claims are untimely, do not qualify for statutory or equitable tolling, do not relate back to the claims in the operative petition, and do not warrant application of the miscarriage of justice exception").) To the extent Petitioner seeks adjudication of these new claims at this stage, the Court finds that they are not properly before the Court. However, a close reading of Petitioner's objections seems to suggest that Petitioner argues that some of these claims affect the sufficiency of the evidence as it pertains to the claims of his Petition. The Court addresses these discrete arguments in turn.

First, Petitioner argues that the state court's determination that "'the jury could have reasonably inferred that Misaalefua was not attempting to enter [Petitioner's] home' . . . rendered the direct appeal ineffective." (R&R Obj. 47.) Specifically, Petitioner argues that this determination of fact "was unsupported, unreasonable and pervaded the entire appeal process." (*Id.*)

Second, Petitioner argues that the state court's finding (that the jury could have reasonably inferred that Misaalefua was not attempting to enter Petitioner's home) was erroneous because it "contained the same premise used by the trial court to mislead the jury"—specifically, that Petitioner "was safe inside his home and no one . . . was trying to break in to get him." (R&R Obj. 50.) Petitioner argues the state court "failed to consider that the danger to Pulley's safety remained as long as Misaalefua remained inside [Petitioner's] dwelling." (*Id.* at 51.) Thus, Petitioner argues the state court's decision was "substantially swayed by its unreasonable determination" of that fact. (*Id.* at 54)

These arguments are unavailing. As explained above, the Court finds that the state

court reasonably based its conclusion on the fact that a reasonable jury could have found that, *even if* Misaalefua was in Petitioner's home and *even if* Petitioner reasonably feared for his safety, Petitioner nevertheless used more force than was reasonably necessary when he shot an unarmed man. Thus, the state court did not "fail to consider" the danger to Petitioner—it reasonably concluded that the jury verdict against Petitioner could be upheld despite that danger. Accordingly, the Court overrules Petitioner's fifth and sixth objections.

## CONCLUSION

For the forgoing reasons, the Court (1) **OVERRULES** Petitioner's Objections, (2) **ADOPTS** the R&R in its entirety, and (3) **DENIES** Petitioner's Petition for Writ of Habeas Corpus. The Court **DENIES** a certificate of appealability because the issues are not debatable among jurists of reason and there are no questions adequate to deserve encouragement. *See Miller-El*, 537 U.S. at 327. The Clerk of the Court shall enter judgment denying the Petition.

**IT IS SO ORDERED.**

Dated: November 14, 2016

Hon. Janis L. Sammartino
United States District Judge